See also D.C., 50 F.R.D. 46.

**MIDLAND INVESTMENT COM-PANY et al., Plaintiffs,**

v.

**VAN ALSTYNE, NOEL & CO., a partnership, et al., Defendants.**

**No. 69 Civ. 1925.**

United States District Court,
S. D. New York.

March 15, 1973.

McDermott, Will & Emory, Chicago, Hamilton Smith, Chicago, of counsel, for plaintiffs.

Simpson, Thatcher & Bartlett, New York City, Stephen P. Duggan, New York City, of counsel, for defendants, Van Alstyne, Noel & Co., James A. Russell, Melvin Solomon, William Butler, Dominick Fitzpatrick.

## MEMORANDUM DECISION

ROBERT L. CARTER, District Judge.

This is an action alleging violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5) of the Securities and Exchange Commission (SEC).

The plaintiffs claim that they are former stockholders of Spiral Metal Co. (Spiral) and that they sold their stock to the defendants either directly or *through brokerages in a time span extending from March 21, 1968 to June 7, 1968.* The complaint alleges that the defendants bought this stock without disclosure of material inside information which they had in their possession. On June 7, 1968, Spiral filed a registration statement with the SEC which disclosed the material information which the defendants allegedly had access to at an earlier date.

This motion is brought on by the plaintiffs to compel the production of certain documents listed in a "Schedule of Documents To Be Produced By [The Defendants]." The schedule is attached to the Notice of Motion and is subdivided into twelve categories, each of which is objected to by the defendants.

### Item 12

Item 12 asks for discovery of "all documents which in any way list, describe, reflect or refer to the present assets, liabilities or net worth of one or more of the [defendants]." I treat this item first because it is, I think, the easiest to dispose of and is substantially distinguishable from Items 1–11.

The purpose of Item 12, as described in the plaintiffs' supporting affidavit, is to determine the net worth of the defendants for the purpose of assessing punitive damages. The difficulty, however, is that punitive damages are not recoverable for a 10(b) violation, Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968) cert. denied, Traster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969) cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L. Ed.2d 93 (1970), which point plaintiffs readily concede. They argue, however, that it is "a simple matter to amend the

complaint to allege common law fraud" for which punitive damages would be recoverable, that plaintiffs intend to so amend their complaint, and therefore "the most expeditious procedure is to permit discovery now rather than to postpone it until the complaint is amended." Plaintiffs' Memorandum of Law at 10–11.

I have serious doubts about the propriety of Item 12, even if punitive damages were recoverable in the cause of action presently before the court. However, it is not necessary to reach that question because the motion as to Item 12 must be denied on a narrower ground.

■ In the first place it is not clear that plaintiffs ever will amend their complaint (their motion papers were served at the end of October and no amendment has yet been filed) and, even if such an attempt is made, there is no assurance that permission will be granted at this late stage in the proceedings. See Rule 15, Federal Rules of Civil Procedure. Secondly, with such an amendment to the pleadings, the defendants may not object to Item 12. The court ought not decide issues before they are ripe for determination. Finally, the defendants should have the opportunity to see the amendment before being forced to make specific objections to Item 12. This is especially so since the amendment may not apply to all defendants. See Plaintiffs' Memorandum of Law at 10. The plaintiffs attempt to secure a ruling in their favor by dangling as bait the prospect of judicial economy. The most appropriate contribution plaintiffs can make to judicial economy is to decide upon the cause of action they wish to assert before seeking to compel production of documents to which they are clearly not entitled in the litigation as presently framed. Plaintiffs' motion to compel the production of documents pursuant to Item 12 of the schedule is denied.

### Items 1–11

In respect of Items 1–11, it must be remembered that extensive discovery has already taken place and a substantial number of documents have previously been produced. The complaint alleges illegal purchases by the defendants from March 21, 1968 to June 7, 1968 and the defendants have refused to produce any documents dated after June 30, 1968 which contain information *relevant* to the period before June 30, 1968.

The defendants' objections may be divided into two broad categories. They oppose the motion generally as to all items and specifically as to Items 3 and 4. I will consider the general objections first.

### General Objections

Each of the complained of requests for production asks for documents prepared before *or* after June 30, 1968 which pertain to the specific subject matter of that request. The defendants first contend that even without considering the nature of the subject matter, these requests should be prohibited merely because they request documents prepared after June 30, 1968, since the complained of activities are alleged to have occurred between March 21 and June 7, 1968.

■■ The defense argues that documents produced after June 30, 1968 are *ipso facto* irrelevant because the alleged violations took place before that date. The simple answer, however, is that the request goes only to papers *prepared* after June 30 and *not* to papers relevant to *events occurring after* June 30. Indeed, in each request the plaintiffs specifically relate the documents requested to events within what they feel to be the relevant time periods. It may be argued

that the requests are too broad or that the subject matter itself is irrelevant. Merely because the document is dated after the last act complained of, however, does not make it immune from discovery if it relates to relevant discoverable information.

The defendants also contend that documents prepared after June 30, should not have to be produced because even if relevant they were prepared in anticipation of litigation and thus are protected by Rule 26(b)(3). The litigation which defendants refer to is not this action specifically but rather an earlier investigation and hearing by the SEC into the same series of transactions involved in this case.

The first problem that must be resolved, assuming *arguendo* that a document was prepared for the SEC litigation (and therefore not discoverable in *that* action) is whether that same document is protected in this action.

In Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2d Cir. 1967) the plaintiff sought discovery from an attorney whose clients were not parties but were intimately involved in the subject matter of the suit. The third party clients had, however, been previously sued by the plaintiffs and that earlier suit involved essentially the same operative facts as the case under consideration. The court held that discovery would not be permitted and relied heavily on the fact that the earlier suit was still active. An appeal was pending on the district court's dismissal for lack of jurisdiction, thus distinguishing the case from Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407, 410 (M.D.Pa.1962) and Tobacco and Allied Stocks Inc. v. Transamerica Corp., 16 F.R.D. 534, 537 (D.Del.1954). In *Hanover Shoe* the documents in question had been prepared in the course of preparation for a government antitrust action and discovery of the document was per-

mitted in a later private antitrust action against the same defendant. In a somewhat later case it was held that a document prepared for a criminal antitrust action was not discoverable in a subsequent civil antitrust action against the same defendant. Philadelphia Electric Co. v. Anaconda American Brass Co., 275 F.Supp. 146, 148 (E.D.Pa.1967).

There has been no decisive resolution of this problem. Although *Republic Gear* seems to suggest that discovery under the instant circumstances should not be permitted, that result is not necessarily compelled. The Advisory Committee on Rules apparently did not consider the problem here raised, see Advisory Committee Note to Rule 26(b)(3) 28 U.S.C.A. Rule 26, and the wording of Rule 26 itself is not particularly helpful. While the phrase "prepared in anticipation of litigation," seems to imply *any* litigation, Rule 26(b)(3) speaks in terms of the different parties to the litigation and implies applicability only if the same parties are involved.

██ I am persuaded, however, that materials prepared for a prior litigation should not be discoverable in a later case where the two actions are closely related. See, *e.g.*, 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 (1970); 4 J. Moore, Federal Practice ¶ 26.64[2] (2d Ed.1972). This approach is particularly appropriate where, as here, the initial litigation derived from the government's regulatory functions since so often the public action is followed closely by private action involving the same complained of activities. Thus to the extent that documents dated after June 30, 1968 were prepared for the SEC litigation they are protected in this action. The question then is which documents were so prepared.

The defendants claim that "all" documents prepared after June 30, 1968 "were prepared in connection either

with the SEC investigation or with the instant litigation." Defendants' Memorandum of Law at 8. The validity of that claim cannot be determined in the abstract. To the extent that the plaintiffs' specific requests are granted, the defendants will be required to produce all documents *relevant to the request*. Any document for which protection is sought on the ground of privilege should be sealed and delivered to the court for a determination of discoverability.

Finally, the defendants argue that all the requests are too broad and burdensome and that therefore discovery should be prohibited. The court recognizes that a delicate balance must often be struck in order to "permit a litigant to obtain whatever information he may need to prepare adequately for the issues that may develop, without imposing an onerous burden of information gathering on his adversary." K. S. Corp. v. Chemstrand Corp., 203 F.Supp. 230, 232 (S.D.N.Y.1962). The very statement of this principle however implicitly recognizes the need for a thorough examination of each request in order to determine its propriety. The requests do not appear so obviously improper as to warrant suspending with such examination in this case.

*Items 3–4*

Defendants' most serious specific objections center on Nos. 3 and 4. Item 3 asks for *all* documents, regardless of date, which in any way relate to any trading of Spiral's common stock by any person as principal agent or broker, customer or owner between October 1, 1967 and June 30, 1968 (the actual schedule provides for a period "between October 1, 1967 and the *present time*." (emphasis added.) The objections by the defendants apparently motivated the plaintiffs to consent to a restriction on the outside date of this period. See Affidavit of Hamilton Smith, p. 6).

Item 4 asks for documents pertaining to the market making activities of Van Alstyne, Noel & Co. in Spiral's common stock between October 1, 1967 and August 1, 1969 (once again the August 1st date is a recent restriction of the original request which extended to "the present time." See Affidavit of Hamilton Smith, p. 7).

The defendant Van Alstyne, Noel & Co. objects to these requests because they "are so broad as to require production of masses of irrelevant documents at great burden and expense to defendant." Defendants' Memorandum of Law at 4. The defendant's objection is two pronged. First that the documents requested are irrelevant and second that to produce the requested documents would result in considerable and disproportionate expense to the defendant when compared with the value accruing to the plaintiffs.

The general scope of discovery is defined by Rule 26(b) which provides for "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

It is well recognized that the discovery rules are to be liberally construed so as to provide easy access to information prior to trial. See, *e.g.*, Buckley v. Vidal, 50 F.R.D. 271 (S.D.N.Y.1970); Metal Foil Products Manufacturing Co. v. Reynolds Metal Co., 55 F.R.D. 491 (E.D.Va.1970); 4 J. Moore, Federal Practice ¶26.56 (2d Ed.1972).

"The boundaries defining information that is relevant to the subject matter involved in the action are necessarily vague and it is practically impossible to state a general rule by which they can be drawn. Certainly

the requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2008, at 45 (1970).

This is not to say, of course, that any party is to enjoy unlimited discovery powers.

"A trial court has a duty, of special significance in lengthy and complex cases where the possibility of abuse is always present, to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense." Dolgow v. Anderson, 53 F.R.D. 661, 664 (E.D.N.Y.1971), citing Waldron v. Cities Service Co., 361 F.2d 671, 673 (2d Cir. 1966) aff'd., First Nat. Bank v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed. 2d 569 (1968).

Item 3 calls for the production of *all* documents pertaining to *any* transaction in Spiral stock by *any* defendant between October 1, 1967 and June 30, 1968.

First it must be noted that "any transaction" refers to sales as well as purchases. The plaintiffs make no effort to justify their requests regarding *sales* by defendants and since the only acts complained of involve the defendants' purchases, this aspect of the request is clearly irrelevant.

Second, it is argued that the information is necessary to establish that the plaintiffs did in fact sell to the defendants. Plaintiffs contend that, in tracing the title of the stock which plaintiffs sold, the defendants' names will appear only if the defendants purchased directly from plaintiffs or through an intermediary but in their own names. In those cases where defendants purchased from plaintiffs in the name of a customer, only the customer's name will appear. Since plaintiffs will not know an individual to be a customer of defendants, they claim to need *all* of the defendants' records of purchases in order to attempt to match up individuals in plaintiffs' chain of title with the defendants.

Even if plaintiffs do need information pertaining to *all* of the defendants' sales in order to determine if they purchased plaintiffs' stock, the only purchases complained of occurred between March 21, 1968 and June 7, 1968. Therefore defendants' purchases outside that period would not assist plaintiffs in detecting the purchaser of their stock. Furthermore, even as to the relevant purchases between March 21 and June 7, the manner chosen by plaintiffs to procure the necessary information seems unnecessarily burdensome.

The plaintiffs could easily submit to defendants a list of individuals who appear on their line of title as purchasers during the relevant period and ask if they (defendants) purchased as brokers for any of them. This would entail far less disruption of defendants' business operations and in fact would be much easier for plaintiffs. If it developed that defendants had acted as brokers in any specific case, further discovery of the specifics could then be had.

As a second justification for Item 3, the plaintiffs assert that it is "the thrust of the complaint, as well as the SEC opinion, that the purchase of Spiral common stock by [the defendants] . . was part of an overall scheme to defraud the plaintiffs and other Spiral stockholders." Plaintiffs' Memorandum of Law, at 7. The plaintiffs offer no further statement explaining how the information here solicited would aid in the proof of such an "overall scheme."

"Relevance" is a word of shifting meaning, whose wavering image evades precise definition not only from case to case but within the confines of a single action. The filing of a complaint is merely the seminal stage of litigation, the future development of which is still largely unknown even to plaintiffs. Relevancy at the outset of litigation is a re-

strictive limitation only in the broadest and most flexible sense.

As the pretrial proceedings illuminate first the faintest hint of the action's mature boundaries and then later reveal its specific and detailed contours, so must the concept of relevance adjust and conform to the nature of the litigation. As the parameters of the controversy become clearer, free-wheeling discovery becomes a wasteful and needless luxury. The parties have nurtured the action with their legal skills and molded its limits to their tastes—its strengths and weaknesses are their creation. Consequently, the concept of relevance has become correspondingly more definitive and the parties are bound by its form.

The attempt to prove "an overall scheme to defraud the plaintiffs and other Spiral stockholders" is irrelevant to this action by a number of named plaintiffs (not a class action) alleging only 10(b) violations during a very limited period of time. This action is in the very late stages of development (indeed the trial is scheduled for late May, 1973) and the time has passed for the plaintiffs to be still searching hopefully for some new offense outside the confines of the case they have heretofore constructed.

■ As was stated in Nagel v. Prescott & Co., 36 F.R.D. 445, 448 (N.D. Ohio 1964), "[w]e are concerned in this lawsuit with transactions involving the [purchase] of particular shares of stock; . . . . [W]e will not compel answers to inquiries directed to transactions between the parties other than those which are the subject of complaint." Thus, plaintiffs' justifications for Item 3 are insufficient to support the broad discovery sought as to defendants' purchases and most surely cannot support its requests as to the defendants' *sales* of Spiral stock which are not involved at all in this action.

Plaintiffs also seem to be saying, Plaintiffs' Memorandum of Law at 8–9, that they may have a cause of action against the defendants merely because the plaintiffs sold and the defendants bought (though not to or from each other) without the revelation of the inside information. See, *e.g.*, Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 353 F.Supp. 264 (S.D.N.Y.1972). Plaintiffs admit that their complaint may not encompass such a charge but once again claim that it is easy enough to amend the complaint. I agree that the complaint does not allege this claim; that alone is sufficient reason to deny the request. Furthermore, even if the claim were properly before the court, plaintiffs' request far exceeds the permissible scope of discovery because of its irrelevancy and excessive burden on defendants.

■ Item 4 seeks all documents relevant to the market making activities of Van Alstyne, Noel & Co., in Spiral Metal between the period of October 1, 1967 and August 1, 1968. The difficulty with this request is the enormous scope of its coverage. In order to comply faithfully with its terms, the defendant Van Alstyne, Noel & Co. could conceivably be required to produce thousands of irrelevant documents. Plaintiffs attempt to justify this request by arguing that the defendant's market making activities were "intended to produce a market atmosphere which would generate the sale by others and the purchase by it of huge quantities of Spiral stock." Affidavit of Hamilton Smith, p. 7. Once again, it must be pointed out that no matter how plaintiffs' attempt to characterize this action, it is a private suit by the named plaintiffs and thus cannot take on the attributes of a class action. It would appear to be relevant to plaintiffs' case for them to learn the circumstances under which the market making activities began and ended and the reasons for such activity. However, request number 4 is so broad as to encompass within its scope a large number of documents not relevant to the issues in this case.

Thus, plaintiffs must more specifically define that area of relevance to the issues of this case and particularize the nature of those documents which fall within that area. As presently stated, the request is denied.

*Items 1, 2, 5, 6, 7, 8, 9, 10 and 11*

■ These requests are clearly too broad to be permitted. Number 1 refers to a public offering of Spiral stock between January 1, 1967 and November 15, 1968. Plaintiffs argue that the opening date was established "out of caution, to make certain that the date of Van Alstyne's initial involvement in the purchase of Spiral stock was fixed." Affidavit of Hamilton Smith, p. 5. Even assuming that it is relevant for plaintiffs to fix that date, it has chosen the wrong vehicle to accomplish that end. It may be conceded that if the request is granted the plaintiffs would learn the date sought, but the request asks for *any* documents relating in *any way* to the public offering. The prospect of requiring the defendants to produce countless irrelevant documents should not be permitted merely because of plaintiffs' "caution." The date which plaintiffs seek is more easily discoverable by way of deposition or interrogatory with perhaps a follow-up request for certain specific documents.

■ Numbers 2, 5 to 11 are equally infirm. In each case some aspect of the subject of the request may be relevant and permissibly discoverable. In all cases, however, the request is far too broad and in fact in many cases the vast majority of documents called for would be irrelevant. The court cannot attempt to frame acceptable requests for counsel. The plaintiffs must determine with specificity the information they are seeking and ask for it with some precision. The plaintiffs will not be permitted to seek particular relevant documents by way of broad and unwieldy requests for production.

So ordered.